```
               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS
```

**WILLIE M. ALEXANDER,**

                **Plaintiff,**

        **v.**                          **CASE NO. 12-3101-SAC**

**RON EGLI, et al.,**

                **Defendants.**

## MEMORANDUM AND ORDER

This pro se civil complaint was filed pursuant to 42 U.S.C. § 1983 by a federal prisoner while he was confined at the United States Penitentiary, Terre Haute, Indiana (USPT).[1] Mr. Alexander complained that in March 2010 during earlier confinement at the Leavenworth Detention Center, Leavenworth, Kansas (LDC) he was denied proper medical treatment for chest pains and other heart attack symptoms. The LDC is a private prison facility operated by the Corrections Corporation of America (CCA). Upon screening the complaint, the court found it "subject to being summarily dismissed" for two main reasons: (1) failure to state a claim for relief under § 1983 because none of the LDC-CCA employees alleged to have denied treatment acted "under color of state law," and (2) the complaint appeared to be time barred. Plaintiff was ordered to show cause why

---

[1] Mr. Alexander notified the court of his changes of address in December 2013 to Medical Center for Federal Prisoners, Springfield, Missouri, and in November 2014 back to USPT.

this action should not be dismissed.[2]  This matter is before the court upon "Plaintiff's Reply to this Court's Order to Show Cause" (Doc. 3) and plaintiff's Motion for Issuance of Summons (Doc. 9).  Having examined all materials in the file, the court finds that plaintiff has failed to show good cause why the complaint should not be dismissed.  Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915A(b) for the reasons stated in the court's prior Order and herein, including failure to state a claim.

**ATTEMPT TO AMEND AND SUPPLEMENT**

Plaintiff's response is entitled "Plaintiff's Reply to this Court's Order to Show Cause" (Doc. 3)(hereinafter "Reply").  In a single sentence within this Reply, plaintiff "moves this Court to allow him to amend the action before the court."  The Federal Rules of Civil Procedure require that motions set out "with particularity" the grounds for the motion.  Fed.R.Civ.P. 7(b)(1).  Furthermore, "a request for leave to amend must give adequate notice to the district court . . . of the basis of the proposed amendment" before the court is required to recognize the motion.  *Calderon v. Kansas Dept. of Social & Rehab. Svcs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999).  Even though pro se pleadings are held to less stringent standards than pleadings drafted by lawyers, pro se litigants must follow the same

---

[2]  Plaintiff was also given time to pay an initial partial filing fee, and he complied.

procedural rules as other litigants. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); see *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n. 3 (10th Cir. 2002). Plaintiff's Reply is not even captioned as a motion and is certainly not a conventional Motion to Amend. Nor did plaintiff submit a complete Amended Complaint[3] with his imbedded request.

Nonetheless, plaintiff proceeds in his 12-page Reply as if it is not only his response to the show cause order but an amendment to his complaint as well. He repeats allegations from his original complaint and presents new allegations. He reargues his Eighth Amendment claims and presents new arguments. He even refers to a new defendant and attempts to add allegations concerning events that occurred later than those in the original complaint. Generally, an Amended Complaint completely supersedes the prior complaint. Plaintiff's Reply is not itself a complete amended complaint. It does not contain a caption with all the prior defendants and the new defendant named therein. It fails to provide additional information for the old and new defendants to facilitate service and lacks other information that is required in the court's form complaint. Consequently, it would be difficult to treat plaintiff's Reply, standing alone, as his Amended Complaint.

On the other hand, prior to service, a plaintiff may amend his

---

[3] Mr. Alexander is no stranger to this and other courts. Local court rules require that civil rights complaints be submitted upon court-approved forms.

complaint as a matter of course pursuant to Rule 15 of the Federal Rules of Civil Procedure. The court has resolved this matter by fully considering the original complaint together with plaintiff's Reply and attached exhibits, and allowing these two filings together to serve as plaintiff's Amended Complaint. As a result, the court has also fully considered all the additional allegations and claims made by plaintiff in his Reply that are his attempt to cure the deficiencies in his original complaint.

To the extent that plaintiff attempts in his Reply to raise new claims based upon events that allegedly occurred after the filing of the original complaint, the proper method was to file a motion to supplement. Fed.R.Civ.P. 15(d)(events occurring since date of complaint are proper for inclusion in a supplemental pleading). Nevertheless, the court has fully considered these supplemental allegations and claims.

**ALLEGATIONS AND CLAIMS**

In his original § 1983 complaint, Mr. Alexander named the following defendants: Ron Egli, Physician Assistant (PA), LDC-CCA; Dr. Stewart Grote, LDC-CCA; Warden, LDC-CCA; and United States Department of Justice. He claimed that his Eighth Amendment right to be free from cruel and unusual punishment was violated because defendants failed to provide him with proper medical treatment. In his Reply, plaintiff adds some allegations as to his treatment at

the LDC-CCA. The court finds from plaintiff's original complaint together with his Reply, that Mr. Alexander has alleged the following to support his claim. On March 19, 2010, at the LDC-CCA, Mr. Alexander was taken to the medical department "via emergency for complaints of severe chest pains, uncontrollable coughing," vomiting and nausea. He was seen by defendant PA Elgi who diagnosed him with a "bad case of heartburn" and prescribed medication for that ailment. Defendant Elgi failed to check plaintiff's "proper vital statistics," and generally failed to follow proper protocol for a patient with severe chest pain. Plaintiff was returned to his cell. If Elgi had followed proper protocol, he would have discovered that plaintiff "was suffering an acute heart attack."[4] On March 23, 2010, at 8:15 a.m., plaintiff again suffered severe chest pains and shortness of breath and went to medical. He was given a breathing treatment and returned to his cell per Egli's orders. At 10:30 a.m., he was rushed to the medical unit with uncontrollable coughing, "decreased wind peak flow," vomiting, and diarrhea. Egli checked his wind peak flow, diagnosed him with bronchitis, and he returned to his cell. On March 24, 2010 at 4:30 p.m., plaintiff returned to the medical department "via emergency" with the "same complaints". He was also experiencing shooting pains in his left arm and jaw area.[5]

---

[4] Mr. Alexander exhibits pages of pertinent medical records but does not provide a medical record for this March 19, 2010 medical encounter.

[5] Plaintiff does exhibit LDC medical records for March 23 and 24, 2010, which recorded his symptoms during these clinical encounters as "coughing and decreased

He "was seen by Amanda Whistance (LPN), who took the plaintiff's vital signs and then called defendant Stewart Grote for orders." Plaintiff was given breathing treatments and kept overnight for observation. He was seen by LPN Ashley the following morning and informed Ashley "that at the present time he was filling (sic) much better." That day, he was also seen by Dr. Grote. Dr. Grote informed plaintiff that he would order an x-ray and asked plaintiff "for permission to the (USMS) to have a gallbladder ultrasound done." Instead of following through with the x-ray and ultrasound, Dr. Grote and defendant Egli cleared plaintiff for transfer to the Oklahoma Federal Transfer Center (OFTC). Defendant Grote failed to "forward the proper medical documentation" or inform medical staff at the OFTC of plaintiff's serious medical issues. The United States Marshals Service (USMS) transported plaintiff "without properly ascertaining the facts" regarding plaintiff's medical condition.

Plaintiff claims that he suffered for several days with symptoms and eventually had a heart attack. He also claims that "because of" Elgi's action, he suffered severe heart damage and required a pacemaker. He asserts that Dr. Grote should have cancelled the transfer and determined the cause of plaintiff's chest pains by having the x-ray and ultrasound completed or performing an EKG. He complains that Dr. Grote instead did nothing to insure that

---

wpf", vomiting and diarrhea, nausea, and "unable to breathe." No mention is made of an acute heart attack or even that plaintiff complained of chest, arm, or jaw pain.

plaintiff's serious medical needs would be handled properly before his transfer or at the next institution, and that as a result plaintiff suffered irreversible damage to his heart. He further claims that the BOP was "never notified properly" of his medical condition. Plaintiff holds the CCA Warden responsible for the actions of his medical staff. He seeks compensatory, punitive, and actual damages for personal injury and mental, emotional damage.

In his Reply, plaintiff adds the following allegations regarding events that occurred after his transfer out of the LDC-CCA and during his brief stay at the OFTC. He arrived at the OFTC on March 25, 2010. While at the OFTC "[t]he Defendant in Oklahoma Richard Hutchinson like the other two Defendant's (sic)"[6] failed to order more tests, and improperly diagnosed his symptoms on March 28, 2010, as asthma rather than congestive heart failure. On April 1, 2010, he was transferred from the OFTC to the United States Penitentiary-McCreary in Pine Knot, Kentucky (USPM).

Plaintiff further adds in his Reply the following allegations concerning events after he arrived at the USPM. Once he arrived, he was no longer experiencing symptoms. Then on April 26, 2010, he went to sick-call complaining of abdominal pain persisting for four

---

[6] Plaintiff concludes that for "all the reasons stated above" he has shown cause why "the court should not dismiss this suit against the Defendant Richard Hutchinson." Defendant Hutchinson was not listed as a defendant in the caption of either the original complaint or the Reply, and was not mentioned in the body of the original complaint. The court has herein considered Hutchinson as a possible defendant due to plaintiff's Reply, which in part has been treated as an amendment to his complaint.

7

days. On May 3, he returned to sick-call complaining of a dry, hacking cough persisting for a week, and explained all his prior symptoms and treatments to "Bennett-Baker, K. (FNP/ACNP)."[7] An EKG was done that day. Bennett-Baker's recorded comments included "CXR done today. Left ventrical hypertrophy with brochial cuffing. Cardiomegally." Bennett-Baker found, among other things, that plaintiff was "desaturated with exertion," "dyspneic with exertion," had "new onset of pitting edema in bilateral lower extremities," diminished breath sounds, and reported "experiencing chest pressure/tightness 'off and on' for several days approximately 6-8 weeks ago." Bennett-Baker assessed plaintiff with presumptive "congestive heart failure, unspecified" and commented: "needs emergent cardiology evaluation." That day she sent plaintiff to the local hospital to be examined by a cardiologist. Doc. 3-1 at 14. Plaintiff's Exhibit G indicates that on May 6, 2010, Bennett-Baker talked with Cardiologist Dr. Iqbal and was informed of Iqbal's diagnosis of "Cardiomyopathy"[8] and prognosis that "if no improvement with medication, he will need to have an implanted defibrillator." *Id.* at 21. Plaintiff was given medications for cardiomyopathy and

---

[7] Plaintiff's exhibited BOP "Clinical Encounter" dated May 3, 2010 (Doc. 3-1 at pg. 14) shows that he informed Bennett-Baker at the USPM: "I also noticed last night that my legs are really swollen up," that he had to stop 2-3 times to rest while walking to chow, he "had experienced midsternal pressure/tightness while in the county jail", he had a hacking cough but no cold, antacids and laxatives had not helped, his "trouble getting (his) air . . . just gets worse", he had gained 8 pounds since his arrival at the USPM, and he was "choking out" when lying down at night to sleep.

[8] Cardiomyopathy is generally described as a chronic disease of the heart muscle (myocardium).

8

blood tests. *Id.* He was discharged from the hospital on May 6, 2010, with instructions for "medical management with ace inhibitor, beta blocker, and antiarrhythmic X 3 months, then needs to return for outpatient echocardiogram." Plaintiff exhibits additional medical records from Springfield dated November 10, 2010, in which Dr. Hare records: "ICD placed yesterday, no problems with procedure." *Id.* at 2.

Plaintiff concludes that his complaint should not be dismissed. He includes a "Relief Requested" segment, in which he again seeks an array of damages.

**PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER**

As noted, in plaintiff's Reply he repeats allegations and arguments from his original complaint and presents new ones, which the court has considered. In addition, he suggests that the court's prior screening order required him to "demonstrate that his medical need (was) objectively sufficiently serious." He thus re-alleges that the delay "from March 19, 2010" and defendants' failure to properly examine, diagnose, and treat him resulted in "greater, substantial heart damage" and adds that it resulted in his "losing 48% of his heart ejection fraction." He then discusses cases in which a defendant medical provider knew about and disregarded a substantial risk to the plaintiff's health. He also compares defendant Egli's actions to a defendant in *Mata v. Saiz*, 427 F.3d

9

745 (10th Cir. 2005), who "neither administered first aid nor summoned medical assistance," failed to contact "qualified medical personnel," and responded that she could do nothing since "the infirmary was closed," and the inmate's "sole recourse was to return to sick call the next morning." Plaintiff then refers to the "reasons stated above" as showing "cause why this court should not dismiss" his lawsuit against defendants Egli and Grote.

## **DISCUSSION**

In its prior screening order, the court found that the complaint stated no claim for relief under § 1983 because the CCA employees named as defendants did not act "under color of state law." The court further found that even if the complaint were liberally construed as seeking relief under *Bivens,* it still failed. For the latter finding, the court cited *Minneci v. Pollard*, ___ U.S. ___, 132 S.Ct. 617, 626 (2012). In *Minneci,* the United States Supreme Court expressly held:

> [W]here, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law.").

*Id.* The primary reason for dismissing plaintiff's claims against defendants Egli, Grote, and Warden is that plaintiff has no cause

10

of action in federal court against these individuals who acted only as employees of a private corporation. None was a state actor or a federal official.

The court did not suggest in its screening order that plaintiff's medical needs were not sufficiently serious. Nor did it discuss any other element of his Eighth Amendment claim. The additions to the complaint that plaintiff makes in his Reply do not address, and therefore do not cure, his failure to state a cognizable claim in federal court against the LDC-CCA employees. His repeated assertions that his claim is meritorious and his references to *Mata* are likewise irrelevant arguments.

The complaint fails to state a claim against defendant Warden. This claim is expressly based on nothing more than the Warden's supervisory capacity. It is settled that a supervisor's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995); see *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)("Supervisory status alone does not create § 1983 liability."). Instead, an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a

11

constitutional right must be established). Plaintiff has alleged no facts whatsoever showing the direct personal participation of defendant Warden in the improper diagnosis or treatment of his medical conditions.

The complaint states no claim against the "United States Department of Justice." Plaintiff may have named this federal agency as a defendant based upon his bald allegations regarding the USMS. However, he alleges no facts regarding involvement in his medical care on the part of the Department of Justice. In any event, the complaint states no claim against this defendant because federal agencies are absolutely immune to suit for money damages.[9]

Plaintiff attempts to add Richard Hutchinson as a defendant in this case by simply referring to Hutchinson in his Reply and adding allegations that on March 28, 2010, Hutchinson failed to provide proper treatment at the OFTC when he diagnosed plaintiff's symptoms as asthma and did not order further medical testing. However, this federal court is not the proper venue for plaintiff's lawsuit against a resident of Oklahoma, and plaintiff suggests no scenario under which this court would have personal jurisdiction over non-resident Hutchinson. See *Trierweiler v. Croxton and Trench Holding Corp.*,

---

[9] Plaintiff does not mention the Federal Tort Claims Act (FTCA) and has not named the United States as sole defendant. Nor does he indicate that he has complied with any other provisions of the FTCA, including the administrative tort claim process, which is a jurisdictional prerequisite.

90 F.3d 1523 (10th Cir. 1996).[10]

The court concludes that plaintiff has failed to state a viable claim in this federal court against any of the named defendants. Accordingly, this action is dismissed for failure to state a claim.

**FAILURE TO EXHAUST BOP REMEDIES**

It is also clear from the face of the complaint that Mr. Alexander did not exhaust BOP administrative remedies prior to filing this action. He answered "No" to the form question on his complaint regarding administrative remedies, and stated that he did not exhaust because he was transferred. Full and proper exhaustion of administrative remedies is required and cannot be ignored by the court. See 42 U.S.C. § 1997e(a).[11] Plaintiff provides no facts or authority suggesting that his transfer warrants an exception to this statutory prerequisite to filing a lawsuit in federal court.

Finally, the court notes that plaintiff's own allegations and exhibits plainly show he was provided medical attention each time he reported to sick-call from March 19, 2010, up to and including May 6, 2010, when he was diagnosed with congestive heart failure and

---

[10] The court declines to transfer plaintiff's claim against Hutchinson to the District of Oklahoma for reasons including that plaintiff's amendment seeking to add Hutchinson as a defendant in this case was filed in July 2012, which is more than two years after Hutchinson's acts are alleged to have occurred.

[11] Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

immediately treated for this serious condition. See *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints.").

**IT IS THEREFORE BY THE COURT ORDERED** that this action is dismissed without prejudice for failure to state a cognizable claim for relief against the defendants.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Issuance of Summons and Complaint (Doc. 9) is denied as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to Proceed without Prepayment of Fees (Doc. 4) is granted. Plaintiff is hereby assessed the remainder of the $350.00 filing fee to be paid through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). The Finance Office of the Facility where plaintiff is currently incarcerated is directed by copy of this Order to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds

14

from his account.

The clerk is directed to send a copy of this Order to plaintiff, to the finance officer at the institution in which plaintiff is currently confined, and to the court's finance office.

**IT IS SO ORDERED.**

Dated this 9th day of December, 2014, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**
